```
-----------------------------x
                             :
DEBORAH MAHON, on behalf of  :
herself and all others       :
similarly situated           :    Civil No. 3:09CV00690(AWT)
                             :
v.                           :
                             :
CHICAGO TITLE INS. CO.        :    August 4, 2017
                             :
-----------------------------x
```

## <u>RULING ON PLAINTIFF'S MOTION TO COMPEL [DOC. #196] AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER [DOC. #198]</u>

Plaintiff Deborah Mahon ("plaintiff") has filed a Motion to Compel seeking the production of a number of documents withheld on the basis of privilege. [Doc. #196]. Plaintiff also seeks to compel testimony regarding these documents. See id. Defendant Chicago Title Insurance Company ("defendant") has submitted opposition to plaintiff's motion, and plaintiff has filed a reply. [Docs. ##202, 203]. Defendant has filed a Motion for a Protective Order, seeking protection from producing a witness to testify about the documents in question pending resolution of plaintiff's motion to compel. [Doc. #198]. Plaintiff has filed a memorandum in opposition to defendant's motion, and defendant has filed a reply. [Docs. ##204, 205]. For the reasons set forth herein, the Court **GRANTS** plaintiff's Motion to Compel, and **DENIES as moot** defendant's Motion for a Protective Order.

## I.  LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009). Nevertheless, the advisory committee's notes to the recent amendment of Rule 26 explain that

> [a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

Williams v. Rushmore Loan Mgmt. Servs., LLC, No. 3:15CV673(RNC), 2016 WL 4083598, at *4 (D. Conn. Feb. 16, 2016) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).

A protective order may be issued by the Court pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which

provides, in relevant part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "Where the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992).

## II.  BACKGROUND

The Court assumes familiarity with the underlying facts of this class action, which relate to title insurance refinance rates. Accordingly, the Court will discuss only those facts that are relevant to the disposition of the motions before it.

Plaintiff served her First Set of Interrogatories and Requests for Production on September 10, 2009. See generally Doc. #197-3. Request for Production No. 17 sought: "Any and all documents constituting communication by, between or among Defendants and/or any of their Affiliates or Agents on the one hand and the Connecticut Insurance Department on the other hand that discuss, mention or refer in any way to the Refinance Rate." Doc. #197-3 at 20. Defendant initially objected to the

request on the grounds that it pertained to merits discovery. After commencement of discovery on the merits of plaintiff's claims, defendant asserted additional objections, and stated that, notwithstanding the objections, defendant was "not withholding any document that is responsive, non-privileged, and consistent with [defendant's] non-objectionable interpretation of this Discovery Request." Doc. #197-5 at 16. Defendant claims that documents potentially responsive to this request had been previously identified in a privilege log dated August 2, 2010, which was supplemented on September 22, 2010. See Doc. #202 at 6; Doc. #202-1 at 24-55.

Defendant served supplemental privilege logs on April 27, 2017, and May 30, 2017. See Doc. #202-1 at 66-121. These logs list additional documents that defendant has determined are responsive to Request 17. See Doc. #196 at 2; Doc. #197-6 at 3. From these logs, plaintiff identifies thirty documents that were withheld as privileged solely on the basis of section 38a-15(g) of the Connecticut General Statutes. See Doc. #197-1. According to the parties, each of these documents pertains to a market conduct examination of defendant that was conducted by the Connecticut Insurance Department ("CID") in 2010. The relevance of these documents is not in dispute; rather, the controversy arises over whether these documents are privileged, and therefore protected from discovery.

**III. DISCUSSION**

At issue before the Court is whether section 38a-15(g) of the Connecticut General Statutes creates an evidentiary privilege that precludes discovery of documents in federal civil litigation that are otherwise relevant to plaintiff's claims. This appears to present a matter of first impression. The Court is not aware of any case interpreting section 38a-15(g), and neither party has drawn the Court's attention to any Connecticut case on point. Thus, the Court will determine whether a privilege is implicated by examining the plain language of the statute itself, and will take guidance from courts in other jurisdictions in which similar questions have arisen. See Pineman v. Oechslin, 488 A.2d 803, 807 (Conn. 1985) (stating that, when presented with a question of first impression, the Supreme Court of Connecticut will "look to the various approaches adopted by other courts that have been confronted with similar questions" for guidance); Monti v. Wenkert, 947 A.2d 261, 274 (Conn. 2008) (same).

**A. Applicable Law**

Where "a federal court's subject-matter jurisdiction is premised on diversity of citizenship, the court must apply state law to privilege issues." Safeco Ins. Co. of Am. v. Vecsey, 259 F.R.D. 23, 27-28 (D. Conn. 2009) (quotation marks and citation omitted) (footnote omitted); see also Fed. R. Evid. 501 ("[I]n a

civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Here, the subject matter jurisdiction of this Court is based on the diversity of the parties, and Connecticut state law supplies the rule of decision for the claims before the Court. Accordingly, the Court will apply Connecticut law to address the privilege issue before it.

### B. Connecticut General Statutes §38a-15(g)

Under Connecticut law, "the burden of establishing immunity from discovery rests with the party asserting the privilege." Babcock v. Bridgeport Hosp., 742 A.2d 322, 355 (Conn. 1999) (quotation marks and citations omitted). Defendant has designated the documents in question as "privileged" under section 38a-15(g) of the Connecticut General Statutes. In response to plaintiff's motion to compel, defendant argues that this statute creates a privilege that precludes discovery of the documents that plaintiff seeks. Plaintiff contends, inter alia, that although the statute deems the documents confidential, it does not create a privilege.[1] Thus, plaintiff argues, the

---

[1] Plaintiff also argues that defendant waived its right to object to the production of these documents because defendant failed to disclose the existence of these documents until April 2017, and previously agreed to the discovery of any such communications. See Doc. #196 at 1-2. Defendant denies these contentions. The Court need not resolve this dispute, however, because the Court determines that the documents are not absolutely privileged under the statute in question and are therefore discoverable.

documents are discoverable, and their production should be compelled.

Title 38a of the Connecticut General Statutes governs insurance and insurance companies. Section 38a-15 authorizes the commissioner of insurance to undertake a "market conduct examination" and prescribes procedures for how the examination is to be carried out. See Conn. Gen. Stat. §38a-15(a). The statute provides that insurance companies and other entities "shall produce the books and papers, in its or their possession, relating to its business or affairs, and any other person may be required to produce any book or paper in such person's custody, deemed to be relevant to the examination, for the inspection of the commissioner, the commissioner's actuary or examiners, when required." Conn. Gen. Stat. §38a-15(b).

Subsection (g) of section 38a-15 provides, in relevant part:

> All workpapers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the commissioner or any other person in the course of an examination made under the authority of this section shall be confidential, shall not be subject to subpoena and shall not be made public by the commissioner or any other person, except to the extent provided in subsection (f) of this section.

Conn. Gen. Stat. §38a-15(g).[2]

---

[2] Subsection (f) provides:

## C.   Statutory Interpretation

In Connecticut, both legislative enactments and precedent guide statutory interpretation.

> General Statutes §1-2z ... instructs us that our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of the case, including the question of whether the language actually does apply. In seeking to determine that meaning §1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.

State v. Orr, 969 A.2d 750, 757-58 (Conn. 2009) (quotation marks and citations omitted). "As with any issue of statutory interpretation, [the Court's] initial guide is the language of

---

Nothing in this section shall be construed to prevent or prohibit the commissioner from disclosing at any time the content or results of an examination report or a preliminary examination report or any matter relating to such report, to (1) the insurance regulatory officials of this state or any other state or country, (2) law enforcement officials of this or any other state, or (3) any agency of this or any other state or of the federal government, provided such officials or agency receiving the report or matters relating to the report agrees, in writing, to hold such report or matters confidential. Conn. Gen. Stat. §38a-15(f).

the statute itself." Babcock, 742 A.2d at 341-42 (quotation marks and citation omitted). Further, "statutes relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of a statutory term." Doe v. Inst. of Living, Inc., 392 A.2d 491, 495 (Conn. 1978) (citations omitted).

Thus, in determining whether the documents in question are privileged from disclosure under section 38a-15(g), the Court looks first to the language of the statute, viewed in relation to other sections of Title 38a. From this analysis, the Court finds that there is no express grant of privilege in section 38a-15(g).

First, the Court observes that subsection (g) expressly protects documents encompassed by this section from being subject to a subpoena; there is no mention of protection from disclosure through discovery. In stark contrast, however, other sections of Title 38a include explicit protection of certain documents from disclosure in discovery and from admission into evidence in civil actions, in addition to protection from subpoena. See, e.g., Conn. Gen. Stat. §38a-137(a) (providing that documents shall not be subject to discovery or admissible in evidence in any civil action); Conn. Gen. Stat. §38a-142(h)(1) (same); Conn. Gen. Stat. §38a-78(b)(8)(A) (same).

Next, while section 38a-15(g) states that the documents shall be "confidential," the statute does not provide in express terms that the documents at issue are subject to an evidentiary privilege. Certainly, confidentiality is akin to a privilege; however, "[a] non-disclosure or confidentiality provision in a statute may not always create an evidentiary privilege, especially if the legislature did not explicitly create an evidentiary privilege." Van Emrik v. Chemung Cty. Dep't of Soc. Servs., 121 F.R.D. 22, 25 (W.D.N.Y. 1988) (quotation marks and citation omitted); see also Amtrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc., 186 F. Supp. 3d 278, 284 (S.D.N.Y. 2016) (finding that while a Montana insurance statute "provides that the documents are confidential, [it] does not expressly create a privilege"). Again, the provision of confidentiality, only, in section 38a-15(g) is in contrast to the language of other sections of Title 38a that specifically provide that certain documents shall be "confidential by law and privileged[.]" Conn. Gen. Stat. §38a-137(a) (emphasis added); see also Conn. Gen. Stat. §38a-78(b)(8)(A); Conn. Gen. Stat. §38a-142(h)(1).

Connecticut courts employ the well-established canon of statutory construction that inclusio unius est exclusion alterius. See, e.g., Marrocco v. Giardino, 767 A.2d 720, 732 (Conn. 2001). This canon supports a finding that the absence of specific language regarding privilege and protection from

~ 10 ~

discovery in section 38a-15(g), in contrast to the inclusion of such language in other statutes in Title 38a, is indicative of legislative intent. <u>Cf.</u> <u>Crochiere v. Bd. of Educ. of Town of Enfield</u>, 630 A.2d 1027, 1042 (Conn. 1993).

The sentence structure of the statute provides further evidence that there is no express privilege created. As previously indicated, the statute states that the records "shall be confidential, shall not be subject to subpoena and shall not be made public[.]" Conn. Gen. Stat. §38a-15(g). The statute thus provides that the documents shall be confidential and <u>also</u> not subject to subpoena. In other words, the legislature determined that designating the documents as confidential would not automatically protect them from being subject to disclosure by subpoena. This suggests that potential disclosure of the documents -- by subpoena or by other means -- is not prohibited merely by the confidential designation of these documents. <u>See</u> <u>Orr</u>, 969 A.2d at 759-60 ("The legislature, by virtue of its explicit provision for both confidentiality <u>and</u> limited disclosure, clearly indicated that it did not consider the word 'confidential' to include the possibility of disclosure and that all communications and records are confidential, regardless of their potential for disclosure." (footnote omitted)). Thus, it is clear from the plain language of the statute, viewed in

context, that there is no express grant of privilege or prohibition against disclosure by discovery.

The Court next considers the purpose and focus of the statute as expressed in its plain language. Defendant argues that subsection (g) prohibits the examined company from releasing the documents in question. In support of this argument, defendant points to the language "any other person" and argues that defendant is encompassed in the definition of "person." Section 38a-1 of the Connecticut General Statutes defines a person as "an individual, a corporation, a partnership, a limited liability company, an association, a joint stock company, a business trust, an unincorporated organization or other legal entity." Conn. Gen. Stat. §38a-1(14).[3]

"Statutes must be read as a whole." <u>United States v. Atl. Research Corp.</u>, 551 U.S. 128, 135 (2007) (quotation marks and citation omitted). There are two references to "any other person" in subsection (g): first, in reference to the origin of the records at issue, and second, in reference to a prohibition

---

[3] Section 38a-1 has been amended, effective July 1, 2017. The amended version of the statute makes no changes to the definition of a person, but does change the numbering of the subsections. Thus, effective July 1, 2017, the definition of a person is found at section 38a-1(16). <u>See</u> INSURANCE PRODUCERS—SURPLUS LINES INSURANCE, 2017 Conn. Legis. Serv. P.A. 17-125 (H.B. 7013).

against disclosure to the public. See Conn. Gen. Stat. §38-15(g) ("All workpapers, recorded information, documents and copies thereof produced by, obtained by or disclosed to the commissioner or any other person in the course of an examination ... shall not be made public by the commissioner or any other person[.]" (emphases added)). "[T]he commissioner" immediately precedes each reference to "any other person," and the first reference is immediately followed by "in the course of an examination." Read as a whole, the statute's language compels the conclusion that "any other person" relates to any other person working with the commissioner, in the course of a market conduct examination. See Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PC 02-7016, 2007 WL 1234481 (R.I. Super. Ct., April 17, 2007) ("Although section 5(f) does refer to 'the director or any other person,' this merely recognizes the fact that the Director may contract with other persons to assist in the examinations process."); see also United States v. Atl. Research Corp., 551 U.S. at 136 (determining that the phrase "any other person" was limited by a prior reference in the statute).

To the extent the plain language of the statute is ambiguous, the Court considers the limited legislative history available, which supports this analysis. The legislative history suggests that the confidentiality provisions of the bill were

directed at the insurance commissioner and the CID, <u>not</u> at the examined companies. The bill represented an apparent expansion of the CID's power to perform market conduct examinations, and the CID provided testimony in support of the bill indicating that the bill "makes the Department's authority clear to protect confidential information it gathers through" the examinations. <u>See</u> SB-159, J.F. Rep., at 1 (Conn., Mar. 31, 2016).[4] The Joint Favorable Report of the Insurance and Real Estate Committee states that the bill was raised on behalf of the Department of Insurance. <u>See id.</u> The bill "clearly states the authority of the Department of Insurance to conduct market examinations" and "provides for statutory confidentiality of information obtained by the examination process[.]" <u>Id.</u>

The debate on the Senate floor and the Office of Legislative Research report on the Public Act both suggest that the bill was aimed at ensuring that the CID would be empowered to engage in market conduct examinations in accordance with national standards. <u>See</u> 59 S. Proc., Pt. 1, 2016 Sess., p. 99-101, remarks of Senators Crisco and Kelly; Report of the Connecticut Office of Legislative Research ("O.L.R."), P.A. 16-

---

[4] Senate Bill 159 was eventually added to another insurance-related bill, Senate Bill 368, as an amendment, and that entire bill became Public Act 16-213, which enacted the relevant portions of Conn. Gen. Stat. 38a-15. <u>See</u> 59 S. Proc., Pt. 1, 2016 Sess., p. 99-100, remarks of Senator Crisco.

213, at 1. The O.L.R. Report states that the Act "makes examination workpapers confidential[.]" P.A. 16-213 O.L.R. Report at 1.

This limited history is not particularly persuasive, but it supports the Court's interpretation of section 38a-15(g) to protect documents related to market conduct examinations in the CID's control from disclosure by the CID or the Commissioner. Construing the statute to apply to the examined company would yield untenable results. Any document provided to the CID during the course of a market conduct examination would become privileged, by sheer virtue of its disclosure during the investigation. Thus, ordinary business records could be shielded from disclosure in a civil action, if they had been previously provided in some form to the CID. Had the legislature intended this outcome, it would have expressly provided for it. Cf. Kumah v. Brown, 58 A.3d 247, 254 (Conn. 2013) ("If, however, the legislature had intended to do [that], for whatever reason, it likely would have said so expressly[.]").

Further, the Court does not agree with defendant that the "act of producing those documents for possible use in a civil trial would make them public." Doc. #202 at 9. If disclosed through the course of discovery, the documents at issue would be subject to the parties' stipulated Protective Order, which governs any confidential material disclosed during the course of

the litigation, and "strictly" limits "access to and use of" such material. Doc. #46 at 1, 3. The Protective Order should allay any concerns the defendant has that this information would become available to the public at large.

### D.  Case Law from Other Jurisdictions

The Court's interpretation of the Connecticut statute is in accord with interpretations of similar statutes in other jurisdictions. In Amtrust, the Court interpreted a Montana state statute pertaining to examinations conducted by Montana's Commissioner of Securities and Insurance ("CSI"). See Amtrust, 186 F. Supp. 3d at 282. The Montana statute provides that

> all examination reports, preliminary examination reports or results, working papers, recorded information, documents, and their copies produced by, obtained by, or disclosed to the commissioner or any other person in the course of an examination made under this section are confidential, are not subject to subpoena, and may not be made public by the commissioner or an employee or agent of the commissioner without the written consent of the company or upon court order.

Id.; Mont. Code. Ann. §33-28-108(3). The defendants in Amtrust argued that the Montana statute creates an evidentiary privilege that precludes disclosure of certain documents subject to this statute. See Amtrust, 186 F. Supp. 3d at 282.

In finding that the documents were not privileged in discovery under the Montana statute, the Amtrust court observed that courts in other jurisdictions have "largely declined to

recognized an insurance-examination privilege[.]" Id. at 283.[5]

The Court held that a literal interpretation of the statute

"would provide sweeping protections to almost any record that

played any part in a CSI examination. Ordinary business records,

and copies of those records in the company's control, that were

exchanged in the course of an examination would receive

protection, even if the records were relevant to pending

litigation and otherwise discoverable." Id. The Court therefore

interpreted the Montana statute "to protect documents in the

possession of CSI — not the examined company." Id. at 284.

    The Southern District of West Virginia adopted a similar

approach in Miller v. Liberty Mut. Fire Ins. Co., No.

2:03CV2325, 2004 WL 897086 (S.D.W. Va. Apr. 27, 2004). In

Miller, at issue was whether section 33-2-19(l)(4) of the West

Virginia Code expressly excepted from discovery certain

documents regarding complaints required by law to be maintained

by the insurance company. See id. at *3-*4. By law, an insurance

company is required to maintain a record of all complaints

received since the date of the last examination by the Insurance

Commissioner. See id. at *3. The defendant insurance company

---

[5] The Amtrust court also noted that the Montana insurance
commissioner had agreed "to a deposition and not object[ed] to
any of the questions posed" and found this "further evidence
that no privilege is implicated[.]" Id.

argued that section 33-2-19(l)(4) protected this record of

complaints from disclosure. See id. The statute at issue states,

in relevant part:

> All working papers, recorded information, documents and
> copies thereof produced by, obtained by or disclosed to
> the commissioner or any other person in the course of an
> examination, analysis or review made under this section
> must be given confidential treatment and are not subject
> to subpoena and may not be made public by the
> commissioner or any other person, except to the extent
> provided in subdivision (5), subsection (i) of this
> section[.]

Id. at *3; W. Va. Code §33-2-9(l)(4). The Court found that while

the statute requires the insurance commissioner to keep the

records at issue confidential, the statute does not "extend a

blanket protection of confidentiality to insurance company

records." Miller, 2004 WL 897086 at *4. The Court continued:

"The documents are simply records of the insurance company; a

party may seek to obtain them from the insurance company, but

not from the Insurance Commissioner." Id.

The Superior Court of Rhode Island has also considered

whether certain materials are privileged from disclosure under

Rhode Island's examination statute. See Heritage Healthcare

Servs., Inc., 2007 WL 1234481. The statute at issue, section 27-

13.1-5(f) of the General Laws of Rhode Island, provides:

> All working papers, recorded information, documents, and
> copies of them produced by, obtained by, or disclosed to
> the director or any other person in the course of an
> examination made under this chapter must be given
> confidential treatment and are not subject to subpoena

and may not be made public by the director or any other
person.

Heritage Healthcare Servs., 2007 WL 1234481; 27 R.I. Gen. Laws
§27-13.1-5. The Court found that the statute applies only to
disclosure of documents by the Rhode Island Department of
Business Regulation ("DBR") and its agents. See Heritage
Healthcare Servs., 2007 WL 1234481. To find otherwise, the Court
stated, would "allow [defendant] to assert a privilege with
respect to every document reviewed or disclosed to DBR, even if
they otherwise would not be privileged." Id. The Court reasoned:

> The statute is designed to assure companies such as
> [defendant] that they will not suffer harm from
> disclosure by entities over which they have no control,
> so that they will be encouraged to cooperate with DBR
> during an examination. This rationale simply has no
> application to the case where the Plaintiff seeks
> disclosure directly from the examined company.

Id.

In Maple Creek Commons Homeowners Ass'n v. State Farm Fire
& Cas. Co., No. 1:08CV00475(TWP), 2012 WL 14022, at *2 (S.D.
Ind. Jan. 4, 2012), plaintiff sought production of a draft
report from the Indiana Department of Insurance's market conduct
examination of the defendant insurance company. The defendant
contended that the draft report was privileged under Indiana
Code section 27-1-3.1-15, which stated, in relevant part:

> All working papers, recorded information, documents, and
> copies thereof produced by, obtained by, or disclosed to
> the commissioner or any other person in the course of an
> examination under this chapter ... are confidential for

the purposes of IC 5-14-3-4, are not subject to subpoena, and may not be made public by the commissioner or any other person, except to the extent provided in section 14 of this chapter.

Id. at *2; Ind. Code §27-1-3.1-15. In finding that the Indiana law permitted discovery of the draft report, the Court reasoned that a previously issued protective order would prevent disclosure of the draft report to the public, and that while the statute protected the documents from subpoena, it did not prevent disclosure pursuant to court order. See Maple Creek Commons Homeowners Ass'n, 2012 WL 14022, at *3-*4.

In each of the above cases, the Court found that the statute at issue did not provide an evidentiary privilege shielding documents in possession of the defendant insurance company from production during discovery. In each of these cases, the statute at issue is similar to section 38a-15(g). The Court finds the reasoning in each of these cases persuasive.

Defendant cites to Gallimore v. State Farm Fire & Cas. Ins. Co., 102 Cal. App. 4th 1388, 1395 (2002), in support of its argument that policy reasons dictate that a privilege should attach to the documents in question. In Gallimore, the California Fourth District Court of Appeal did not reach the issue of privilege; rather, the Gallimore court noted the trial court's determination of privilege, but reversed the decision on other grounds. See id. at 1394 n.6; 1400. The Court observed

that defendant "may well be correct that plaintiff is relying on evidentiary matter that is both confidential and privileged and perhaps inadmissible to prove the allegations of the complaint." Id. at 1400 (emphasis added). The Court did not, however, make a finding that any privilege attached.

The Northern District of Illinois relied on Gallimore in Rowe v. Bankers Life & Cas. Co., No. 09CV491, 2011 WL 1897181, at *5 (N.D. Ill. May 18, 2011), to determine that the California statute at issue protects similar documents from disclosure under a privilege. These cases go against the weight of authority across jurisdictions. As the Amtrust Court stated: "If this Court were interpreting the California statute, Gallimore would carry great weight, as it did for the Rowe court. But the California statute is not at issue here and, in any event, the Court does not find the California trial court's reasoning to be persuasive." Amtrust, 186 F. Supp. 3d at 287.

IV.  CONCLUSION

For the reasons set forth above, the documents related to the market conduct examination in the possession and control of defendant are not privileged under section 38a-15(g) of the Connecticut General Statutes such that they are protected from disclosure in civil discovery. Accordingly, the Court **GRANTS** plaintiff's Motion to Compel. [**Doc. #196**]. Defendant shall produce those documents identified in Exhibit A to plaintiff's

Motion to Compel forthwith, and no later than **August 14, 2017.**
Defendant shall also produce a witness to testify regarding
Topic No. 4 of plaintiff's Notice to Produce. <u>See</u> Doc. #198-2 at
11. In light of the above, the Court **DENIES AS MOOT** defendant's
Motion for Protective Order. [**Doc. #198**].

This is not a Recommended Ruling. This is an order
regarding discovery which is reviewable pursuant to the "clearly
erroneous" statutory standard of review. <u>See</u> 28 U.S.C.
§636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R.
72.2. As such, it is an order of the Court unless reversed or
modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 4th day of
August, 2017.

/s/

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE